IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS LAVIGNE,          )<br>     Petitioner,            )<br>                            )<br>          v.                )<br>                            )<br>FEDERAL BUREAU OF PRISONS,  )<br>WARDEN H.J. MARBERRY,       )<br>     Respondents.           ) | C.A. No. 06-258 Erie<br><br>District Judge McLaughlin<br>Chief Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the Amended Petition for Writ of Habeas Corpus filed by federal prisoner Nicholas Lavigne be denied, and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner's amended habeas petition is filed pursuant to 28 U.S.C. § 2241. [Document # 17]. At the time he commenced these proceedings, Petitioner was incarcerated at the Federal Correctional Institution at McKean ("FCI McKean"), located in Bradford, Pennsylvania.[1] During his incarceration at FCI McKean, a random cell search resulted in the discovery of contraband (five packs of cigarettes) under the drawer of the cubicle desk assigned to him. He was subject to disciplinary proceedings that resulted in a finding that he had committed the prohibited action of "Possession of Anything Not Authorized," BOP Code 305. That rule provides that each inmate is responsible for keeping his area free of contraband. See 28 C.F.R. § 541.12 (table, at No. 4); BOP Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>, Chapt. 3 at p. 1.

Petitioner raises three claims in the Amended Petition:

    Claim 1:     He was denied due process in his disciplinary proceedings

---

[1] The Federal Bureau of Prison's (the "BOP's") federal inmate locator reflects that Petitioner is no longer incarcerated at FCI McKean. He has not provided this Court with the address of the facility in which he is currently incarcerated.

1

|  |  |
|---|---|
|  | because his cellmate was solely responsible for the unauthorized items that were found in his cell and, therefore, the evidence presented at the hearing before the Disciplinary Hearing Officer ("DHO") was constitutionally inadequate to warrant a determination that he violated BOP regulations and policy; |
| Claim 2: | He was denied due process in his disciplinary proceedings because he was not informed of his rights, his staff representative refused to make a statement on his behalf at the hearing before the DHO, he was not allowed to present witnesses or scientific proof to support his defense, and he lacked the faculties to present his own defense due to injuries he sustained in an earlier car accident; and, |
| Claim 3: | The purported over-crowded condition at FCI McKean "makes it impossible to control what an assigned inmate's bunkmate may or may not bring into the living space that is shared" and has resulted in cruel and unusual punishment. |

(Docket # 17 at pp. 2-4). As relief, Petitioner seeks an Order directing that his Good Conduct Time be restored.

### A.     Relevant Factual and Procedural History

On April 14, 2004, the United States District Court for the Eastern District of Michigan sentenced Petitioner to a forty-six month term of imprisonment with a two-year term of supervised release to follow for his conviction of "Unlawful Possession of a Firearm," in violation of 18 U.S.C. § 922(g)(1). The BOP commenced Petitioner's sentence on May 31, 2004. According to Respondent, if Petitioner receives all Good Conduct Time available to him under 18 U.S.C. § 3624(b), his projected release date is November 30, 2007. (Docket # 19, Exhibit 1a).

On April 1, 2006, at approximately 12:58 p.m., staff at FCI McKean issued Incident Report Number 1451229, charging Petitioner with "Possession of Anything Not Authorized" in violation of BOP Code 305. (Docket # 19, Exhibit 1d at p. 1). The Incident Report alleged that, during a random cell search on that date at 11:55 a.m., prison staff discovered five packs of cigarettes under the drawers of the desk in the cubicle assigned to Petitioner. (Id.) When a prison staff member delivered the Incident Report to Petitioner later that evening, the staff member advised him of his rights during the disciplinary process, and Petitioner indicated that he understood. The staff member read Petitioner the charges as set forth in Section 11 of the Incident Report, and Petitioner

responded, "[i]t is not mine." (Id. at p. 2). Petitioner did not request any witnesses. The staff member attached a photograph of the evidence to the Incident Report and forwarded it to the Unit Discipline Committee ("UDC") for an initial hearing. (Id.)

On April 4, 2006, Petitioner's initial hearing before the UDC was held. (Id. at p. 1). At the hearing, Petitioner contended that the cigarettes discovered in his cubicle were not his. (Id.) At the conclusion of the hearing, the UDC referred the Incident Report to the DHO for a final hearing. Petitioner also was advised of his rights before the DHO. (Docket # 19, Exhibit 1e). Petitioner requested that prison staff member J. Wertenberger assist him as his staff representative, but he declined to call witnesses. (Docket # 19, Exhibit 1f). J. Wertenberger was contacted and he agreed to be Petitioner's staff representative. He was issued a list of the duties of the staff representative. (Docket # 19, Exhibit 1g).

The DHO hearing was conducted on April 12, 2006. (Docket # 19, Exhibit 1h). At the hearing, J. Wertenberger declined to make a statement. (Id. at p. 1). Petitioner told the DHO that the cigarettes at issue did not belong to him. (Id.) At the conclusion of the hearing, the DHO determined that Petitioner had committed the prohibited act of "Possession of Anything Not Authorized." The DHO advised Petitioner that he based his decision upon the written statement of the reporting staff member, which stated that during a random search of Petitioner's cubicle, five packs of cigarettes were found under the desk drawer of the cubicle. (Id. at p. 2). The DHO noted that he considered Petitioner's statement that the cigarettes found in the cubicle were not his, but explained that he gave little weight to Petitioner's statement because inmates were responsible for keeping all areas under their control free from contraband. (Id.)

Based upon the available evidence, the DHO determined that Petitioner committed the prohibited act for which he was charged and sanctioned him with the disallowance of twenty-seven days of Good Conduct Time, fifteen days of disciplinary segregation, and ninety days of commissary restriction. (Id.). In stating the basis for the sanctions, the DHO explained that the possession of anything not authorized seriously disrupts the security and orderly running of the institution, and that inmates possessing tobacco have caused significant security and safety issues throughout the BOP. The DHO further explained that the possession of any items not issued

through regular institution channels interferes with the staff's ability to maintain security and safety controls, and cannot be tolerated. (Id.) After the hearing, the DHO advised Petitioner of his right to appeal the disciplinary action. (Id. at p. 3).

On or around May 18, 2006, Petitioner filed a Regional Administrative Remedy Appeal. (Docket # 19, Exhibit 1b at p. 2). He stated that he was appealing because the cigarettes at issue belonged to his cellmate and, therefore, he did not commit any violation of BOP rules and regulations. (Id.) Petitioner asserted that he could obtain affidavits from staff and inmates to support his defense. (Id.) D. Scott Dodrill, Regional Director, denied the appeal. (Id. at p. 3) He explained to Petitioner that: "Program Statement 5270.07, Inmate Discipline and Special Housing Units, states it is an inmate's responsibility to keep his or her area free of contraband. While you contend the cigarettes were not yours, you are responsible for all items in your cell. It was reasonable for the DHO to find you committed the prohibited act." (Id.) Dodrill further advised Petitioner that he had the opportunity to request witnesses at his DHO hearing, and that he had waived that right. (Id.)

Next, Petitioner filed a Central Office Administrative Remedy Appeal, claiming once again that the evidence did not support a finding of guilt. (Docket # 19, Exhibit 1c at p. 1). In denying that appeal, Harrell Watts, Administrator, National Inmate Appeals, explained to Petitioner the greater weight of the evidence supported the DHO's decision. (Id. at p. 3).

### B.   Subject Matter Jurisdiction

Initially the court notes that, although a challenge to a federal sentence as imposed must be made under 28 U.S.C. § 2255, a claim concerning execution of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976). "Execution of a sentence" includes matters such as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, and type of detention. Because Petitioner is challenging the execution of his sentence in the Amended Petition, his habeas petition is properly brought under 28 U.S.C. § 2241.

### C. Exhaustion Of Administrative Remedies and Procedural Default

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 must first exhaust administrative remedies before bringing his claim to federal court. United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). The BOP is the agency charged with administering the federal prison system, Wilson, 503 U.S. at 334-35, and for all federal prisoners challenging BOP determinations, the initial venue is the administrative process. The BOP codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement.

To exhaust administrative remedies before the BOP, a federal inmate seeking review of an aspect of his confinement must first seek to resolve the dispute informally. See 28 C.F.R. § 542.13. In cases in which an inmate seeks to challenge the disciplinary action taken by the DHO, the administrative remedy may be accessed by first filing a Regional Administrative Remedy Appeal with the appropriate BOP Regional Office. (Docket # 19, Exhibit 1 at ¶ 3 (citing 28 C.F.R. § 542.14(d)(2)). If the inmate is not satisfied with the Regional Director's response, he may submit an appeal of the Regional Director's decision to the Central Office. See 28 C.F.R. § 542.15.

Respondents concede that Petitioner proceeded to all required levels of review with respect to Claim 1. However, they demonstrate that he failed to raise the issues contained in Claim 2 and Claim 3 during the administrative appeal process. As a result, they argue, Petitioner has procedurally defaulted Claim 2 and Claim 3. The Court agrees.

Petitioner's failure to raise the issues in Claim 2 and Claim 3 in his administrative appeals amounts to a default of those claims. Accord Harden v. Sherman, Civil Action No. 05-356 Erie, slip op., 2006 WL 3814767 (W.D. Pa. Dec. 27, 2006). To overcome the default, Petitioner must establish cause for his default and prejudice. Moscato, 98 F.3d at 762 ("In sum, we hold that a federal prisoner who challenges a disciplinary proceeding within a federal institution, fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice.") He has not met that burden. He has filed no reply to

Respondents' procedural default argument and he has failed to demonstrate that some objective factor external to his defense prevented him from raising the issues asserted in Claim 2 and Claim 3 during the administrative appeal process.  Id.; Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000).  Thus, Petitioner has not overcome his procedural default and Claim 2 and Claim 3 must be denied on that basis.

> **D.     The DHO's Determination Was Supported By the Requisite Degree of Evidence**

Because Claim 2 and Claim 3 should be denied as procedurally defaulted, the only claim that shall be addressed on the merits is Claim 1.  In that claim, Petitioner challenges the DHO's finding that the charge of "Possession of Anything Not Authorized" was supported by the weight of the evidence.  In conducting habeas review, a federal court must decide whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241(c)(3).  Where a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is affected, and minimal procedural guarantees are recognized.  See e.g., Superintendent v. Hill, 472 U.S. 445 (1985).

In Superintendent v. Hill, the United States Supreme Court held that requiring "a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens."  Id. at 455.  The Supreme Court then held "that the requirements of due process are satisfied if *some evidence* supports the decision by the disciplinary board to revoke good time credits."  Id. (emphasis added).  Once the reviewing court determines that there is at least "some evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO.  Id.  "Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence."  Id. at 455-56.

In this case, there is the requisite evidence to support the DHO's determination that Petitioner committed the violation with which he was charged.  It is not disputed that five packs of

contraband cigarettes were discovered under the drawer of a cubicle desk assigned to Petitioner. (Docket # 19, Exhibit 1d at p. 1). Although Petitioner argues that the cigarettes belonged to his cellmate, the DHO did not credit his defense because BOP policy and regulations instruct inmates that it is their responsibility to keep their areas free of contraband. 28 C.F.R. § 541.12 (table, at No. 4); BOP Program Statement 5270.07, Inmate Discipline and Special Housing Units, at Chapt. 3, p. 1). Thus, pursuant to BOP rules and regulations, it makes no difference who actually owned the cigarettes, because Petitioner was responsible for any object found in the cubicle desk assigned to him.

Essentially, Petitioner is contesting the application of the "constructive possession" doctrine to his case. Under that doctrine, an inmate is deemed to be responsible for any contraband found within his cell, absent exculpatory evidence that makes the finding of the inmate's "possession" so unreliable as to not satisfy the "some evidence" standard set forth in Superintendent v. Hill. Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992); Okocci v. Klein, 270 F.Supp.2d 603, 613 (E.D.Pa. 2003); White v. Kane, 860 F.Supp. 1075, 1079 (E.D.Pa. 1994), aff'd, 52 F.3d 319 (3d Cir. 1995); Thompson v. Hawk, 978 F.Supp. 1421, 1423-24 (D.Kan. 1997). The application of the constructive possession doctrine has been upheld in the context of prison disciplinary proceedings that concerned the discovery of contraband in a shared room, for which no resident acknowledged responsibility. See Tweedy v. Vannatta, 101 Fed. Appx. 158 (7th Cir. June 3, 2004) (marijuana found in cup in common area in two person cell); Hamilton, 976 F.2d at 346 (six weapons were found in air vent of cell shared by four inmates); Okocci, 270 F.Supp.2d at 613 (weapon found in a two-person cell); White, 860 F.Supp. at 1079 (applicable where contraband was found in cell assigned to one inmate, but which was accessible to other inmates in the prison).

The United States Court of Appeals for the Third Circuit has not articulated a limit that the Due Process Clause may place upon the constructive possession doctrine. Several other courts, however, have adopted a probability analysis, based on the number of prisoners having access to the area in which contraband is discovered, to determine whether the due process requirement of "some evidence" as articulated in Superintendent v. Hill is satisfied. For example, in Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992), the petitioner argued that the constructive possession rule

7

did not provide a sufficient evidentiary basis for the disciplinary committee's finding of culpability, where three other inmates also had access to the area in which the contraband had been discovered. The Court of Appeals for the Seventh Circuit found that, "given the 25% chance of guilt, 'the record is not so devoid of evidence that the findings of the disciplinary board without support or otherwise arbitrary,'" and that such a percentage constituted "some evidence " to support the disciplinary committee's decision. Id. at 346 (citing Superintendent v. Hill, 472 U.S. at 457). See also, Harms v. Godinez, 829 F.Supp. 259, 264 (N.D.Ill. 1993) (holding that "[i]f a one-in-four chance of actual guilt [as in Hamilton] does not violate the due process clause, then a one-in-six chance of guilt does not either."); Mason v. Sargent, 898 F.2d 679, 680 (8th Cir. 1990) (one-in-two chance, or 50% probability that each inmate is guilty amounts to "some evidence"); Superintendent v. Hill, 472 U.S. at 456-57 (one-in-three chance, where three inmates were seen fleeing the scene of an assault, constituted "some evidence" for purposes of constructive possession).

In this case, the unauthorized property in question was found in a cubicle Petitioner shared with one other inmate. Accordingly, Petitioner's one-in-two chance of guilt – a 50% probability – satisfies the "some evidence" requirement enunciated in Superintendent v. Hill, which is all that is necessary to support the DHO's finding of culpability. Because the DHO's decision in this case is supported by the requisite evidence, Petitioner is not entitled to habeas relief.

### E.     Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could

resolve the issue differently, or that the question deserves further proceedings." McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001). Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard.

However, federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Amended Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: October 2, 2007